IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Maurice L. Williams, | : | |
| Plaintiff | : | Civil Action 2:13-cv-0995 |
| v. | : | Judge Smith |
| Marsha G. Shein, | : | Magistrate Judge Abel |
| Defendant | : | |

**INITIAL SCREENING
REPORT AND RECOMMENDATION**

Plaintiff Maurice L. Williams, a prisoner at FCC Coleman, brings this action against defendant Marsha G. Shein, who represented him on appeal from his federal criminal convictions. This matter is before the Magistrate Judge for a Report and Recommendation on initial screening of the complaint pursuant to 28 U.S.C. §1915A(a) and (b)[1] and 42 U.S.C.

---

[1]The full text of §1915A reads:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for Dismissal.--On review the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

§1997e(c) to identify cognizable claims, and to dismiss the complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  The Magistrate Judge finds that the complaint should be dismissed for lack of subject matter jurisdiction and because it fails to state a claim upon which relief may be granted and therefore **RECOMMENDS** dismissal of the complaint.

The facts underlying Williams's criminal convictions were summarized by the United States Court of Appeals for the Sixth Circuit as follows:

> On February 26, 2009, Williams was charged with thirty-two federal drug-related offenses in a superseding indictment along with twenty-eight co-defendants. At trial, more than twenty witnesses testified for the Government regarding Williams's leadership role in an international drug trafficking organization. See R. 1139–48, Trial Transcript. Trial testimony revealed that Williams was involved in cocaine trafficking back in the 1990s. R. 1148, p. 103–04. Williams worked "together as a team" with Kenyatta Powell beginning in 2001. Id. at 112. Williams and Powell would pool their money to buy cocaine from Albert Bean and sell it to lower-level dealers. Id. at 105, 108, 113–15. Before long, Powell introduced Williams to Terrence Pfeiffer so that he could join the cabal. Id. at 128. Pfeiffer subsequently introduced Williams to Antonio Carlton, who similarly assumed a role in the organization. R. 1140, p. 397. Williams and Powell jointly assigned drug-related tasks to Pfeiffer and Carlton, id., until Powell went to prison in 2001. R. 1139, p. 131.Once Powell was in prison, Williams took control of the entire operation. Id. at 133. In doing so, Williams supervised numerous additional individuals. To begin, under Williams's business model, Williams supplied other cocaine dealers, such as Kevin Cook, Cheo Greenhow, and Casey Drake, with cocaine on consignment. See R. 1141, p. 665; R. 1144, p. 1150; R. 1142, p. 731–32. Williams

---

> (c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.

2

also hired multiple people to facilitate the smooth operation of his organization. First, there was Darrell Evans, who was responsible for transporting the cocaine. See R. 1141, p. 607–09. Later, when Williams worried that Evans might cooperate with police, Williams hired a woman named Crystal to make drug runs. R. 1144, p. 1156. Ultimately, Williams expanded his operation, and he hired Demetrius Slaughter and Marlon West to help transport the cocaine. R. 1139, p. 153; R. 1144, p. 1060. Kevin Cook, acting on Williams's behalf, also hired Wayne Marshall to help facilitate the cocaine delivery. R. 1143, p. 967–76. This rotating cast of characters facilitated Williams's cocaine and marijuana organization, but Williams also hired individuals exclusively for the purpose of selling marijuana, such as Malcom Ross. R. 1143, 928–32.

Unbeknownst to Williams, the Federal Bureau of Investigation ("FBI") began investigating his organization in January 2008. R. 1148, p. 33. In May, FBI agents received court permission to tap Cook's phone, and by June, additional wiretaps were authorized for a phone number identified in the first wiretap. Id. at 37, 44–45. In July, FBI agents executed search warrants at four locations deemed likely to contain evidence of illicit activity, including Williams's residence in Charter Oak. Id. at 75.

Several months later, Williams organized a "business" trip to the Mexican border accompanied by six individuals: "Drake, Powell, West, a woman called Purple, Jeff Williams, and a Jamaican associate of Williams named John." Appellee Br. at 16. On February 26, 2009, the grand jury returned a superseding indictment against Williams and his co-defendants. R. 33, Superseding Indictment. By March 29, 2009, FBI agents arrested everybody but Williams. R. 1148, p. 77. Williams continued to elude capture until August 2009. Id. at 73, 93.

Williams's trial began on March 22, 2010. R. 1148. The jury returned a guilty verdict with respect to 30 counts: operating a CCE in violation of 21 U.S.C. § 848(a); conspiracy to distribute, possess with intent to distribute, and to distribute more than 5 kilograms of cocaine in violation*486 of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; conspiracy to distribute, possess with intent to distribute, and to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846; possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and twenty-five counts of the use of a telecommunications device to facilitate a drug transaction in violation of 21 U.S.C. § 843. Appellant Br. at 2.

On October 14, 2010, the district court sentenced Williams to 25 years' imprisonment on the CCE; five years' imprisonment for the firearm, to be served consecutively with the CCE; and four years on each of the telecommunications charges, to be served concurrently with the CCE. R. 1272, Sentencing Transcript.

*United States v. Maurice L. Williams,* 461 Fed.Appx. 483, 485-87, 2012 WL 447413, \*\*1 and \*\*2 (6th Cir. February 13, 2012).

The complaint makes the following allegations. Defendant Marsha G. Shein contracted to represent plaintiff Maurice L. Williams on the appeal from his federal criminal convictions. She promised to personally draft his appeal, any en banc petition, and petition for writ of certiorari. Further, she promised to appear on his behalf at any oral argument that might be scheduled. Williams paid Shein $75,000 for her representation. However, Elizabeth Brandenberg, not Shein, appeared for Williams at oral argument in the Sixth Circuit Court of Appeals. Finally, Shein did not file a petition for writ of certiorari.

The complaint also alleges that when Williams protested Shein's failure to appear at oral argument and, later, her failure to file a petition for writ of certiorari, he demanded a partial refund of his $75,000 payment for attorney fees. Shein did not refund any of the fee. She became angry and told Williams, "Your Black-Drugdealing-Ass should be greatful that I even took on your case because I've handled and dealt with better cases and people for a lot more than your little 'Hood' money." When Williams responded that she should have no trouble refunding some of her fee, Shein retorted, "Go back to school or Africa."

The complaint pleads three claims for relief: Breach of contract; fraud, false pretense, and theft of services; and violation of civil rights by racial and social discrimination.

Rule 8(a), Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007):

. . . Rule 8(a)(2) requires only "a short and plain statement of the claim

4

> showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.': *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Moreover, *pro se* complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Twombly,* 550 U.S. at 570." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

The complaint alleges jurisdiction under 28 U.S.C. §§ 1331 and 1332. However, the complaint does not plead any actionable federal claim for relief, and there is no jurisdiction under 28 U.S.C. § 1331 because more than $75,000 is not at issue. Although Shein's alleged statements to Williams during their fee dispute were hurtful and insensitive, they were not actionable discriminatory conduct that violated his civil rights. Those words did not act to deprive Williams of any protected federal right.

Although Quigley prays for compensatory and punitive damages in the amount of $350,000, it is clear that more than $75,000 is not in controversy. In each of the three claims for relief, plaintiff prays for the same damages: a return of some portion of the $75,000 attorney fees he paid Shein. His claim is for breach of contract, and it carries no right to recover punitive damages.

Accordingly, it is hereby **RECOMMENDED** that the complaint be **DISMISSED** for want of subject matter jurisdiction and for failure to state a federal claim for relief.

**IT IS FURTHER ORDERED** that the United States Marshal serve upon defendant Marsha G. Shein a copy of the complaint and a copy of this Order. Defendant is not requir-

ed to answer the complaint unless later ordered to do so by the Court.

The Clerk of Court is DIRECTED to mail a copy of this Order to the Attorney General of Ohio, Corrections Litigation Section, 150 East Gay St., 16th Floor, Columbus, OH 43215.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

    s/Mark R. Abel
    United States Magistrate Judge